2009 BNH 007

---

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                      Bk. No. 08-11122-MWV
                                                                                            Chapter 13
John P. Plourde and
Debbie M. Plourde,
          Debtors

*Marc L. Van De Water, Esq.*
*VAN DE WATER LAW OFFICES, PLLC*
*Attorney for Debtors*

*Rian K. Vernon, Esq.*
*HARMON LAW OFFICES, P.C.*
*Attorney for American Home Mortgage Servicing, Inc.*

*Lawrence P. Sumski, Esq.*
*Chapter 13 Trustee*

## MEMORANDUM OPINION

The Court held a hearing on confirmation of the plan and objection to confirmation on February 4, 2009, at which time the Court ordered that responses be filed by February 11, 2009, and continued the hearing to March 20, 2009, for this Court's decision.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

John P. Plourde and Debbie M. Plourde (the "Debtors") own certain non-residential real property located at 2836 Drifting Lily Loop, Kissimmee, Florida (the "subject property").  American Home Mortgage Servicing, Inc. ("AHMS"), is the holder of the first mortgage on Debtors' property.  On May 19, 2008, Debtors filed their Chapter 13 plan.  Thereafter, AHMS filed a proof of claim showing a secured claim of $288,396.59, and a pre-petition arrearage amount due on the loan of $30,310.57.  Both parties agree that AHMS's claim is undersecured and can be bifurcated.  Debtors value the subject property at $233,600, while AHMS values the subject property at $277,000.  Debtors further propose to pay the secured amount of the allowed claim at a 4.25% interest rate over the remaining life of the loan.  AHMS proposes to apply an interest rate of 8.25% to the secured amount of the allowed claim to be paid over the life of the plan.  The parties provided their own appraisals of the property and submitted the following issues for the Court's determination: (1) whether payments on the bifurcated claim can extend beyond the life of the plan, (2)  valuation of the real estate, (3) the interest rate to be applied to the allowed secured claim, and (4) whether the plan is feasible.

**DISCUSSION**

I.      **Effect of Bifurcation**

The parties agree that AHMS's claim can be bifurcated pursuant to § 1322(b)(2).[1]  Upon bifurcating a claim, a debtor has two options: (1) modify the terms of the claim, 11 U.S.C. § 1325(a)(5);[2] or (2) cure the mortgage default within the plan period, 11 U.S.C. § 1322(b)(5).  If the debtor chooses to modify the terms of the claim, he must pay the amount of the secured claim as valued by the court in full

---

[1] Section 1322(b) provides in pertinent part:

> (b) Subject to subsections (a) and (c) of this section, the plan may-
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims . . . .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . . .

11 U.S.C. § 1322(b)(2), (5).

[2] Section 1325(a)(5) provides in pertinent part:

> (a) Except as provided in subsection (b), the court shall confirm a plan if- . . .
>
> (5) with respect to each allowed secured claim provided for by the plan-
>
> (A) the holder of such claim has accepted the plan;
>
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
>
> (C) the debtor surrenders the property securing such claim to such holder....

11 U.S.C. § 1325(a)(5).

within the life of plan. Id. at § 1322(d)[3]. See also In re Kheng, 202 B.R. 538, 539 (Bankr. D.R.I. 1996) (if payments are changed, § 1325(a)(5) and § 1322(d) require the payments to be completed over the life of the plan); Brown v. Shorewood Fin., Inc. (In re Brown), 175 B.R. 129, 133 (Bankr. D. Mass. 1994) (if payments are changed, debtor must pay the allowed amount of the secured claim in full within the plan term); In re Murphy, 175 B.R. 134, 137 (Bankr. D. Mass. 1994) (adopts reasoning in In re McGregor, 172 B.R. 718 (Bankr. D. Mass. 1994) which holds that a change in monthly payments requires the secured claim to be paid over life of the plan); and In re Legowski, 167 B.R. 711, 716 (Bankr. D. Mass. 1994) ("§ 1322[(d)] and § 1325(a)(5) confine repayment of "modified" secured claims . . . to the life of the plan."). If the debtor chooses to cure the mortgage default within the plan period, the original contract terms are reinstated and the debtor can maintain the original contract payments during and beyond the life of the plan. Id. at § 1322(b)(5). In re Kheng, 202 B.R. at 539-40; In re Brown, 175 B.R. at 133; In re Murphy, 175 B.R. at 137. A change in monthly payments of principal and interest with respect to the allowed secured claim triggers § 1322(d), which requires the full amount of the secured claim to be paid over the life of the plan. In re McGregor, 172 B.R. at 721; In re Kheng, 202 B.R. at 539. The Debtors in the present case, have chosen to bifurcate AHMS's claim. Because the Debtors propose to modify the claim by changing the monthly payments of principal and interest, they must pay the entire portion of the secured claim in full during the life of the plan. The Debtors cite to Fed. Nat'l Mortg. Ass'n v. Ferreira (In re Ferreira), 223 B.R. 258 (Bankr. D.R.I. 1998) to support their argument that they may make payments over the remaining term of the loan. Ferreira simply clarifies the interplay between subsections (b)(2) and (b)(5) of § 1322 in stating that bifurcation of a claim under § 1322(b)(2) in and of itself does not trigger § 1322(d)'s requirement that payments be completed over the life of the plan. Id. at 261-62. Payments with respect to the secured portion of a bifurcated claim can extend beyond the life of the plan,

---

[3]Section 1322(d) states:

> (d) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years. 11 U.S.C. § 1322(d).

- 4 -

*if* all provisions of § 1322(b)(5) are complied with. Id. at 262. That is, if the debtor cures the default, then his original contract payments (at the contract interest rate) can extend beyond the life of the plan. Further, Ferreira cites to cases within the First Circuit which affirmatively hold that a change in monthly payments requires the claim to be paid in full during the life of the plan. Id.

### II. Valuation of the Real Estate

The United States Supreme Court and First Circuit have held that the proper valuation under § 506(a)[4] is the Replacement Value Approach. Assoc. Commercial Corp. v. Rash, 520 U.S. 953, 965 (1997); and In re Winthrop Old Farm Nurseries, Inc., 50 F.3d 72, 74-75 (1st Cir. 1995). Under the "Replacement Value Approach," the value of the property is based on what the debtor would have to pay for a comparable property. Assoc. Commercial Corp., 520 U.S. at 965. The parties agreed to submit their appraisals to the Court to determine the value of the property. However, the Court did not have the benefit of testimony including cross examination of the appraisers.

#### A. Debtors' Appraisal

The Debtors' appraiser values the property at $240,000. In reaching this valuation, the Debtors' appraiser conducted an "Exterior Only" appraisal of the subject property and used three comparable sales. Two of the comparable sales were in the same neighborhood as the subject property, and one was outside the neighborhood of the subject property. Comparable Sale #1, located at 2912 Blooming Alamanda Loop, Kissimmee, Florida, has an adjusted sale price of $267,100. Comparable Sale #2, located at 8063 White Crane Court, Kissimmee, Florida, has an adjusted sale price of $193,400. Comparable Sale #3, located at 2506 Oneida Loop, Kissimmee, Florida, has an adjusted sale price of $256,000. The adjusted sale price of Comparable Sale #2 is particularly low. In fact, there is a $63,000 difference between the

---

[4]Section 506 provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim . . . ." 11 U.S.C. § 506(a).

adjusted sale price of this property, and the next lowest adjusted sale price amongst the comparable sales used by either party's appraiser.

**B. AHMS's Appraisal**

AHMS's appraiser arrives at a valuation of $277,000. In reaching this valuation, AHMS's appraiser conducted both an "Interior and Exterior" appraisal of the subject property and used three comparable sales. Two of the comparable sales were outside the neighborhood of the subject property, and one was inside the neighborhood of the subject property. Comparable Sale #1, located at 2701 Autumn Creek Circle, Kissimmee, Florida, has an adjusted sale price of $284,500. Comparable Sale #2, located at 2575 Oneida Loop, Kissimmee, Florida, has an adjusted sale price of $276,900. Comparable Sale #3, located at 2912 Blooming Alamanda, Kissimmee, Florida has an adjusted sale price of $266,880.

**C. The Court's Valuation**

Both appraisers used, as a comparable sale, the property located at 2912 Blooming Alamanda. Additionally, the appraisers used comparable sales of similar properties on Oneida Loop.[5] AHMS's appraiser listed, as a reference, an active sale located at 8066 White Crane Court. This property, down the street from Debtors' comparable sale located at 8063 White Crane Court property, has a non-adjusted value of $349,000. Although the properties are somewhat different,[6] the gap in value between the two properties is extremely large. As such, Debtors' comparable sale at 8063 White Crane should be treated as an outlier and omitted from their appraisal. AHMS's comparable sale at 2701 Autumn Creek has the highest valuation of either appraiser's comparable sales, *and* is outside the subject property's neighborhood. Since the parties have two other similar comparable sales, the Autumn Creek property will be omitted from AHMS's appraisal. The average of Debtors' remaining comparable sales is

---

[5]Both comparable sales on Oneida Loop are between four and five years old, have a gross living area of 2,136 square feet, and have five bedrooms and four bathrooms.

[6]Debtors' comparable sale located on White Crane Court is younger, has less gross living area, and has less total rooms.

$261,550, while the average of AHMS's remaining comparable sales is $271,890. As a result, the Court finds that the value of the property is $266,720.

### III.     Interest Rate to be Applied to Allowed Secured Claim

In order for AHMS to receive the present value of its secured claim, the Court must determine the proper interest rate pursuant to § 1325(a)(5)(B)(ii). The parties have agreed that the "Formula Approach" is appropriate to ascertain the interest rate. The United States Supreme Court in Till v. SCS Credit Corp., 541 U.S. 465 (2004)[7] and the court in In re St. Cloud, 209 B.R. 801 (Bankr. D. Mass. 1997) offer guidance in using the "Formula Approach." Both Till and St. Cloud suggest using an objective interest rate, such as the prevailing prime rate, as a base rate and then adding a premium based on the risks associated with the particular case. Till, 541 U.S. at 479; See In re St. Cloud, 209 B.R. at 806 (the court used the current average interest rate for a thirty year fixed mortgage).

While neither Court precludes higher premiums, both Till and St. Cloud noted that courts have generally approved a premium of one to three percentage points. Till, 541 U.S. at 480; In re St. Cloud, 209 B.R. at 807. The Court should "select a rate high enough to compensate the creditor for its risks but not so high as to doom the plan." Till, 541 U.S. at 480. Factors to consider when adding risk include: rate of collateral depreciation, liquidity of the collateral market, debtor's financial prospects, Lender's risk factors and lost opportunity costs, and pre-petition mortgage arrearage. Till, 541 U.S. at 479-80; In re St. Cloud, 209 B.R. at 808-09.

The Court rules that 6.25% is the appropriate interest rate to be applied to the allowed secured claim. In reaching this decision, the Court used the current prime rate of 3.25% as a base rate, and added

---

[7]The decision in Till was decided by a plurality of justices which prevents the case from binding lower courts.

three percentage points as a risk premium.  A three percent premium is warranted for the following: liquidity of the market, the creditor's inherent risks in extending credit to a Chapter 13 debtor, the high pre-petition arrearage of $30,310.57, and the likelihood of depreciation in value since both appraisals noted a decline in the market area of homes.

  **IV.**  **Feasibility of the Plan**

Section 1325(a)(6) requires, for confirmation, that "the debtor will be able to make all payments under the plan and to comply with the plan."  11 U.S.C. § 1325(a)(6).  Debtors' Schedule J shows a negative disposable income of $246.40.  Because Debtors must pay AHMS's allowed secured claim in full during the life of the plan, the payments will necessarily be in excess of Debtors' disposable income.  As a result, the Debtors' plan is not feasible.

## CONCLUSION

For the reasons set out herein, AHMS holds a secured claim in the amount of $266,720 and an unsecured claim in the amount of $21,676.59.  The Debtors must pay interest on the allowed secured claim at the rate of 6.25%.  Because Debtors have modified the payments on AHMS's claim, the secured portion must be paid in full during the life of the plan.  Consequently, Debtors' plan is not feasible, and confirmation is denied.  This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.  The hearing scheduled for March 20, 2009, is canceled.

DATED this 9th day of March, 2009, at Manchester, New Hampshire.

            /s/ Mark W. Vaughn
            Mark W. Vaughn
            Chief Judge